IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

OARGARETTE EVANS,                    :
                                     :
        Plaintiff,                   :
                                     :        CIVIL ACTION 09-445-M
v.                                   :
                                     :
WEISER SECURITY SERVICES, INC.,      :
*et al.*,                            :
                                     :
        Defendants.                  :


MEMORANDUM OPINION AND ORDER


        This action comes before the Court for consideration of

Defendant Weiser Security Services, Inc.'s (hereinafter *Weiser*)

Motion for Summary Judgment (Doc. 52).[1]  Jurisdiction is invoked

in this Court under 28 U.S.C. § 1331, pursuant to Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), and other

statutory law.  The parties filed written consent and this

action was referred to the undersigned Magistrate Judge to

conduct all proceedings and order judgment in accordance with 28

U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 16).  After

consideration, Weiser's motion is **DENIED** in its entirety.


---

[1]Defendant requested oral argument on this Motion (Doc. 52, p.
2).  It is the Court's opinion that oral argument is unnecessary,

1

The relevant facts, briefly, are as follows.  Plaintiff Oargarette Evans was employed by Weiser in August 2007 as an S1 supervisor, performing contract security work at Defendant Springhill Medical Center (hereinafter *SMC*) in Mobile, Alabama (Complaint, ¶ 12).  Evans's direct supervisor at Weiser was Kathy Brokaw;[2] her direct supervisor at SMC was Defendant Andree McCoo (Complaint, ¶ 13).

In early October 2007, Brokaw demoted Evans to a security officer position because McCoo had "instructed Brokaw that the S1 position needed to be filled by a male employee;" a male employee filled the S1 position (Complaint, ¶¶ 17-18).  "On or about October 24, 2007," McCoo told Plaintiff to meet him in his office; after having Evans look out his window to perform a task, he "approached her from behind and leaned over her, pressing his lower body against the plaintiff's buttocks and she felt him press his erect penis against her buttocks" (Complaint, ¶¶ 23-24).  When Evans turned and confronted him, McCoo "grabbed his crotch, and told the plaintiff, 'Damn, you have a soft ass and made my shit hard'" (Complaint, ¶ 25).

especially in light of Defendant's failure to reply to the response to the Motion.  Therefore, the motion for oral argument is **DENIED**.

[2]Though Brokaw is not a party to this action, she has brought suit, alleging discrimination, against Weiser ,in this Court as well. *Brokaw v. Weiser Security Services, Inc.*, C.A. 09-0773-M.

Evans immediately called and complained to Brokaw who told her to see her at the end of her shift; the two finally met about a week later when Brokaw took her statement and instructed Evans to keep working and be quiet while she passed the complaint to Chuck Remington, Regional Manager and Weiser Vice President (Complaint, ¶¶ 26-28). Remington met with Plaintiff on November 13, 2007, but they did not discuss the complaint at that time; several days later, they met again and the VP told Evans that he would investigate her complaint (Complaint, ¶¶ 29-30). In January 2008, Remington met with Plaintiff and typed up her previously written statement; Evans was never contacted again regarding her complaint against McCoo (Complaint, ¶¶ 31-32). Following Evans's complaint, McCoo denied Plaintiff her lunch breaks and the use of on site carts during inclement weather (Complaint, ¶ 33).

On January 28, 2008, Evans filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter *EEOC*), alleging sexual harassment and discrimination against Weiser and SMC (Complaint, ¶ 34). On February 11, the Administrator/COO of SMC "requested that Weiser 'seriously weigh the pros and cons of Ms. Evans remaining on post at Springhill' in light of plaintiff's [] EEOC claim" (Complaint, ¶ 35). On

March 10, Brokaw informed Plaintiff that she could no longer work at SMC because McCoo did not want her there and that she would be arrested if she returned to the site; Brokaw also told Plaintiff that Remington would reassign her to another site, but Evans was never reassigned though she continued to inquire about it through March 2008 (Complaint, ¶¶ 36-39, 41). The next day, March 11, 2008, Evans filed a Charge of Discrimination with the EEOC against Weiser and SMC, alleging sexual harassment, discrimination, and retaliation (Complaint, ¶ 40). Plaintiff subsequently received authorization from the EEOC to file a private action (Complaint, ¶ 11).

On July 20, 2009, Evans filed this action against Weiser, asserting claims of sexual harassment, discrimination, and retaliation (count I) and negligent and/or wanton supervision, training, and retention (count II) (Complaint, ¶¶ 46-59).[3] Weiser subsequently filed this Motion for Summary Judgment (Doc. 52). Evans filed a response to the Motion (Docs. 59-60); though given the opportunity (*see* Docs. 53, 57), Weiser did not reply.

The Rules of Civil Procedure, in discussing summary judgment, state that

---

[3]Other Defendants are named and other claims raised, but as they are irrelevant to this Motion, further delineation is unnecessary.

> an adverse part [to a motion for summary
> judgment] may not rest upon the mere
> allegations or denials of the adverse
> party's pleading, but the adverse party's
> response, by affidavits or as otherwise
> provided in this rule, must set forth
> specific facts showing that there is a
> genuine issue for trial.  If the adverse
> party does not so respond, summary judgment,
> if appropriate, shall be entered against the
> adverse party.

Fed.R.Civ.P. 56(e); *see also Celotex Corporation v. Catrett*, 477 U.S. 317, 325-27 (1986).  The Court further notes, in a motion for summary judgment, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).  Summary judgment may be granted against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof.  *Id*.  The Court notes that it "must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

*Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir.

1992), *cert. denied*, 507 U.S. 911 (1993) (internal citations and

quotations omitted).  Furthermore, "[s]ummary judgment is

justified only for those cases devoid of any need for factual

determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831

F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

In a Title VII case, a Plaintiff must prove discriminatory

motive.  *International Brotherhood of Teamsters v. United

States*, 431 U.S. 324, 335 n.15 (1977); *Perryman v. Johnson Co.,

Inc.* 698 F.2d 1138, 1141 (11th Cir. 1983).  Since motive or

intent is seldom capable of proof by direct evidence, the

Supreme Court has established a legal framework which allows a

court to infer discriminatory motive on the basis of

circumstantial evidence.  *Perryman*, 698 F.2d at 1141.  The Court

will use the evidentiary framework set out in *McDonnell Douglas

Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of

Community Affairs v. Burdine*, 450 U.S. 248 (1981), to analyze

the record in considering Weiser's Motion.  *See United States

Postal Service v. Aikens*, 460 U.S. 711 (1983); *Barber v.

International Brotherhood of Boilermakers, Lodge No. 57*, 778

F.2d 750, 754 (11th Cir. 1985).  Under *McDonnell Douglas*, the

Court first considers whether the Plaintiff has established, by

6

the preponderance of the evidence, a *prima facie* case of

discrimination. Second, assuming a valid *prima facie* case, the

Court then considers whether the Defendant has rebutted the

Plaintiff's case by articulating a legitimate nondiscriminatory

reason for its decision. And third, the Court considers whether

the Plaintiff has carried the ultimate burden of proving, by a

preponderance of the evidence, that the Defendant's rebuttal is,

in fact a pretext for true discriminatory intent. *Barber*, 778

F.2d at 754-755; *Harris v. Birmingham Board of Education*, 712

F.2d 1377, 1382 (11th Cir. 1983). The Court notes that "[t]he

ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff

remains at all times with the plaintiff." *Springer v. Convergys

Customer Management Group Inc.*, 509 F.3d 1322, 1347 (11th Cir.

2007). This means that "[i]f the plaintiff does not proffer

sufficient evidence to create a genuine issue of material fact

regarding whether each of the defendant employer's articulated

reasons is pretextual, the employer is entitled to summary

judgment on the plaintiff's claim." *Chapman v. AI Transport*,

229 F.3d 1012, 1024-25 (11th Cir. 2000).[4]

---

[4]The Court notes that *Chapman* was a case brought pursuant to the
Age Discrimination in Employment Act.

Plaintiff claims that Weiser "willfully and maliciously subjected [her] to unlawful sexual harassment" which affected the terms of her employment (Complaint, ¶ 47). To establish a hostile environment sexual harassment claim under Title VII, Evans must show (1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999), *cert. denied*, 529 U.S. 1068 (2000).

It is clear from the Complaint that Plaintiff's harasser, McCoo, was an employee of SMC and not Weiser (Complaint, ¶ 13). When the harassment is committed by a non-employee, "a Title VII plaintiff must show that the employer either knew (actual notice) or should have known (constructive notice) of the harassment and failed to take immediate and appropriate corrective action." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003) (citation omitted). The *Watson* Court went on to say that actual notice is established when an employee complains, following the procedures that have been set out by

8

the employer in a clearly published policy for dealing with sexual harassment; "[c]onstructive notice [] is established when the harassment [is] so severe and pervasive that management reasonably should have known of it." *Watson*, 324 F.3d at 1259.

Defendant apparently concedes the first four elements of the *prima facie* case as its argument skips to the fifth requirement, *viz.*, that Evans demonstrate a basis for holding Weiser liable (*see* Doc. 52 Brief, pp. 5-7).[5] Defendant argues, though, that its response to the harassment was "immediate and appropriate under the circumstances" (Doc. 52 Brief, p. 7).

The facts establish that McCoo's first act of harassment towards Plaintiff was the incident in his office on October 24, 2007; ten minutes after it happened, Evans called Brokaw who told her to not say anything and to continue as though nothing had happened (Complaint, ¶¶ 23-24; Doc. 60, Evans Depo., pp. 268-70).[6] Plaintiff went to Brokaw's office two days later, hoping to be transferred to another job location, but there was nothing else available at that time; Brokaw told her to stay at

---

[5]Weiser disputes the immediacy of Plaintiff's reporting the harassment, asserting that Evans did not report it until January 7, 2008, and whether the touching incident in McCoo's office even occurred as Evans did not apparently work on the day she says that it took place (Doc. 52 Brief, pp. 3-4). Defendant acknowledges, however, that the Court cannot make a determination based upon undisputed facts (Doc. 52 Brief, p. 6).

SMC until the investigation was completed (Evans Depo., pp. 274-75).  According to Plaintiff, Regional Manager Remington talked with her about her complaint about three weeks later (several days after November 13, 2007) (Complaint, ¶¶ 29-30).  On January 9, 2008, Remington typed up Evans's statement of her complaint against McCoo (Doc. 52, Exhibit F; *cf.* Complaint, ¶ 31).  Near the bottom of the statement, Evans said that she wanted to continue working at SMH; the statement was signed by Evans and witnessed by Remington (Doc. 52, Exhibit F).  In her deposition, Evans stated that although she told Remington on January 9 that she wanted to be moved to another job, she was comfortable in continuing to work at SMC because McCoo had not been allowed to interact with the guards since her complaint (Doc. 60, Evans Depo., pp. 306-08).  Remington and Charlene Lee-Sutherlin, Weiser's Human Resources Manager in New Orleans, met with the SMC president shortly after the January 9 statement was made and informed him of Evans's complaint against McCoo; they told him that Evans wanted to keep working at SMC as long as she did not have interactions with McCoo like those she had previously experienced (Doc. 52, Lee-Sutherlin Depo., pp. 28-30; *see also*

---

[6]Unless otherwise noted, all citations to Evans's Deposition will be to Document 60.

Doc. 52 Brief, p. 4, ¶¶ 13-14).  SMH's Administrator, Jeffery
St. Clair, stated by deposition, however, that he did not learn
of Evans's complaint until he received the EEOC charge; evidence
provided by St. Clair indicates that he met with Remington and
Lee-Sutherlin on February 11, 2008 (Doc. 60, St. Clair Depo.,
pp. 67, 78-79; *see also* Complaint, ¶ 35).

Accepting Plaintiff's assertions as true, *Tipton*, 965 F.2d
at 999, the Court finds that the undisputed facts do not support
Weiser's assertion that summary judgment is warranted on Evans's
claim of sexual harassment as Plaintiff has shown that Defendant
did not take immediate and appropriate corrective action under
*Watson* once she made her complaint known to them.  The incident
occurred on October 24, 2007; though Evans made her complaint
that day to her immediate supervisor, a formal written statement
was not taken until January 9, 2008.  The grievance was not
presented to SMC until sometime after that; while Weiser
officials indicated that it was shortly after the January 9
meeting, SMC's St. Clair said that the meeting did not occur
until February 11 and that he did not learn of the incident
until after that meeting.  Weiser's taking of more than two-and-
one-half months (October 24, 2007 until January 9, 2008) in
making Evans's complaint known to SMC cannot be considered

immediate corrective action.  Weiser's Motion for summary

judgment is **DENIED** on Plaintiff's claim of sexual harassment.

Plaintiff claims that Defendant retaliated against her "for

protesting and complaining about sexual harassment" by

discharging her (Complaint, ¶ 50).  "To establish a prima facie

case of retaliation under 42 U.S.C. § 2000e-3(a), a plaintiff

must show 'that (1) [she] engaged in . . . statutorily protected

expression; (2) [she] suffered an adverse employment action; and

(3) there is a causal [connection] between the two events.'"

*Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir.

2002) (*quoting Johnson v. Booker T. Washington Broad. Serv.,

Inc.*, 234 F.3d 501, 507 (11th Cir. 2000)).  If a *prima facie* case

is made, the defendant must then produce "'legitimate reasons

for the adverse employment action.'"  *Brochu*, 304 F.3d at 1155

(*quoting Johnson*, 234 F.3d at 507 n.6).  Plaintiff is then given

the opportunity to show that the defendant's proffered reasons

are mere pretext.  Pretext can be shown "either directly, by

persuading the court that a discriminatory reason more than

likely motivated the employer, or indirectly, by persuading the

court that the proffered reason for the employment decision is

not worthy of belief."  *Hall v. Alabama Ass'n of School Boards*,

326 F.3d 1157, 1166 (11th Cir. 2003).  Again, it is Evans's

burden to show, by a preponderance of the evidence, that she is a victim of unlawful discrimination.  *Burdine*, 450 U.S. at 256.

Defendant has only challenged Plaintiff's ability to establish that there is a causal connection between the statutorily protected expression and the adverse employment action (*see* Doc. 52 Brief, pp. 7-9).  "To establish a causal connection, a plaintiff must show that 'the decision-maker[s] [were] aware of the protected conduct,' and 'that the protected activity and the adverse action were not wholly unrelated.'" *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000), *cert. denied*, 531 U.S. 1076 (2001) (*quoting Farley v. Nationwide Mut. Ins.*, 197 F.2d 1322, 1336 (11th Cir. 1999)).

There is no dispute that Plaintiff filed a discrimination charge with the EEOC on January 28, 2008 (Complaint, ¶ 34; Doc. 9, ¶ 34); there would also seem to be no dispute that Evans was relieved of her responsibilities at SMC barely more than a month later.  However, it is the reason why Plaintiff no longer has employment with Weiser that is subject to disagreement.

Defendant has put forth two different reasons as to why Plaintiff cannot establish a *prima facie* case of retaliation. The first reason is that Evans was removed from her job for not performing her job responsibilities and then lying about it; the

second reason is that she was not actually terminated from her job, but chose not to accept other work (Doc. 52 Brief, p. 8). In support of the first reason, Defendant points to a memo from McCoo to Brokaw which states the following:

> It makes one wonder what other improprieties are taking place? I was reminded of this on 3/5/08 at or around 1135am, when I asked S-1 to make wheel chair rounds. She stood out in the ER driveway for over 40 minutes, never leaving to provide this very important "Customer Service". Almost 30 minutes later I went and asked her had she checked on the wheel chairs like I asked and her reply was, "I checked on them 10 minutes ago." Jim Johnson and I was in shock that she would lie about a "Customer Service" issue. These issues can not go unaddressed. I can not and I will not tolerate customer service violations, as I have said in all my monthly evaluations; customer service is the most important issue at this post. Therefore it is my recommendation that both individuals are removed from this post and no replacements are sent for either position. In-house Security will assume all responsibilities of 6am – 1400 pm S-1 position only.

(Doc. 52, Exhibit I).[7]

In rebuttal, Evans has pointed to testimony by Brokaw that McCoo "was looking for any way to get rid of her, after she made

the statement – or the – accused him of the sexual harassment"
(Doc. 60, Brokaw Depo., p. 276).   Evans also testified that
Brokaw had told her that McCoo had called her and told her that
he did not want Evans back at SMC; Evans also stated that Brokaw
had not said anything to make her think that Weiser did not want
her to come back to work (Doc. 60, Evans Depo., pp. 313-14).

Weiser points to a second exhibit to support its second
reason for Plaintiff's lost employment.   That exhibit, entitled
"Statement Regarding Oagarita Evans" states as follows:

> On March 10, 2008, Andre McCoo called
> to tell me that he was eliminating the S-1
> day shift Monday through Friday, and also
> one of the positions at Building #3.   Later
> that afternoon, Ms. Evans called to tell me
> she would return to work the following day
> after being out due to a automobile
> accident.   I then told her that her position
> had been eliminated.   Chuck called and spoke
> with her and told her about Rooms To Go.
> She called me this morning at 9:40a.m to
> tell me that she drove out there to look at
> the site and she could not accept it because
> "that place is too scary".   She then said
> she couldn't work weekends.   Then she said
> "that place is dangerous".   I told her since
> she was refusing a full 40 hour position
> that I may need to ask her to turn in her
> uniforms.   She said "well ya'll will have to
> pay for my unemployment.["]   I told her that
> I would be back in touch with her later
> today after I spoke with Mr. Remington, that

---

[7]The Court notes that the "second employee" statements are not
relevant here.

> since she is refusing full time work, I may
> have no other choice.

(Doc. 52, Exhibit J).[8]

Evans testified that Brokaw did not offer her a job at the time that she was informed that she no longer had a job at SMH; she further stated that she would have taken it if she had been offered a job at Rooms To Go (Doc. 60, Evans Depo., pp. 314, 321). Plaintiff further stated that the only offer she received was several weeks later when Brokaw called her about a job at West, a credit card center; Brokaw was supposed to call her back and give her details, but never did (Doc. 60, Evans Depo., pp. 314-16). Evans stated that Randolph[9] told her that there was not really a position at West, so she declined it even though she had previously told Brokaw that she would take it (Doc. 60, Evans Depo., pp. 315-16, 320-21).

Evans also argues that the reasons proffered by Weiser are mere pretext for the real reason that she was terminated which was because she had filed an EEOC discrimination charge. As proof of the assertion, Plaintiff points to a letter from

---

[8]Defendant's Exhibit List indicates the memo is from Brokaw and dated March 13, 2008 (Doc. 52, p. 2).
[9]Jack Randolph was Administrative Assistant to Brokaw at Weiser (*see* Doc. 60, Randolph Depo., pp. 14-17).

Jeffery St. Clair to Chuck Remington, dated February 11, 2008, in which he stated the following:

> I would also respectfully request that Weiser seriously weigh the pros and cons of Ms. Evans remaining on post at Springhill given that her filing of an EEOC claim seems contrary to what she had expressed to you in earlier meetings. The decision at this point, as to whether Ms. Evans stays on post at Springhill is up to Weiser Security.

(Doc. 60, Exhibit I, Plaintiff's Ex. 13).

Defendant has proffered two explanations for why Evans is no longer working for them. While Plaintiff asserts that these reasons are pretext for firing her, she has not denied McCoo's statements concerning her failure to do as she was told on March 5, 2008 and her subsequent lie to him. In any event, the Court is not sure how relevant that is to this discussion as Weiser—and not McCoo—is the subject of this Motion and Weiser has indicated that it offered other employment to Evans which she declined. Evans denies Defendant's assertion, though, creating a factual dispute which the Court, on this Motion, cannot resolve. Therefore, Defendant's Motion is **DENIED** as to Plaintiff's claim of retaliation.

Plaintiff also claims that she was "subjected to disparate treatment on the basis of her gender, female, in the terms,

conditions and benefits of her employment, including her

demotion from the S1 position" (Complaint, ¶ 52). Evans asserts

that she has provided direct evidence of this discrimination

(Doc. 59, p. 25). With regard to these types of cases, the

Eleventh Circuit Court of Appeals has stated the following:

> "When there is direct evidence that
> discrimination was a motivating factor in
> the challenged employment decision, the
> appropriate analysis is different from that
> employed in a case where only circumstantial
> evidence is available." *Trotter v. Board of
> Trustees of University of Alabama,* 91 F.3d
> 1449, 1453 (11th Cir. 1996); *Bell v.
> Birmingham Linen Service,* 715 F.2d 1552,
> 1556 (11th Cir.), *cert. denied,* 467 U.S.
> 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984).
> The basis for the analysis is that once a
> plaintiff produces direct evidence of a
> discriminatory motive, and the trier of
> facts accepts this testimony "the ultimate
> issue of discrimination is proved." *Bell,*
> 715 F.2d at 1556. As such, "the defendant
> may avoid a finding of liability only by
> proving by a preponderance of the evidence
> that it would have made the same decision
> even if it had not taken the [illegitimate
> criterion] into account." *Price Waterhouse
> v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct.
> 1775, 1795, 104 L.Ed.2d 268 (1989).

*Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 961-62 (1997).

Plaintiff was employed by Weiser in August 27, 2007 as an

S1 supervisor at SMH (Complaint, ¶ 12). In early October,

Brokaw was removed from the position (Complaint, ¶ 17). The balance of Plaintiff's evidence consists, in large part, of general statements by Brokaw that McCoo repeatedly expressed his preference for males at the S1 and guard positions (*see* Doc. 59, ¶¶ 12-20). Brokaw herself states, though, that one of two reasons Plaintiff was removed from the S1 position and replaced by a male was because McCoo wanted a male in the position; the other reason was because of Evans's excessive absences (Doc. 60, Brokaw Depo., pp. 225-27). Brokaw also testified that she told her superiors that McCoo had instructed her not to send men to work at the hospital; she said that Mr. Kline "just looked at me. He didn't say a word. I told Mr. Weiser, and he grunted and shook his head. Did not say anything" (Doc. 60, Brokaw Depo., p. 243; *see generally* Tr. 242-3).[10] Brokaw testified that when she told Remington, "[h]e told me to handle it, to give him what he wanted, and to quit fighting putting women out there;" she continued by saying "[t]o start giving him what he wants" (Doc. 60, Brokaw Depo., p. 243). Evans has also testified that she was told by Brokaw at the time of her demotion that it was because McCoo wanted a male in that position (Doc. 60, Evans Depo., pp. 115-17).

_____

[10]Kline was the COO at Weiser; Weiser was the CEO/President (Doc.

In *Haynes v. W.C. Caye & Co., Inc.*, 52 F.3d 928, 930 (11th Cir. 1995), the Eleventh Circuit Court of Appeals held that the statements made by an employer, when considering a woman for a newly-created position, were direct evidence of discriminatory intent.  The first statement made by the employer was that he did not believe that women were tough enough to do the job while the second was that he did not believe that "a sweet little old lady could get tough enough with the customers and collect the money." *Haynes*, 52 F.3d at 930.  In reaching this decision, the *Haynes* Court cited *Price Waterhouse v. Hopkins*, 490 U.S. 228, 236 (1989) in which the U.S. Supreme Court had focused on "one partner['s] repeatedly comment[ing] that he could not consider any woman seriously as a partnership candidate and believ[ing] that women were not even capable of functioning as senior managers" as direct evidence of discriminatory intent.

The statements made in *Haynes* and *Price Waterhouse* are not materially different from those made by McCoo.  The problem here, though, is that McCoo is not the defendant being considered in this Motion.  However, the Court finds Brokaw's testimony that her superiors allowed her to accommodate McCoo's discriminatory actions very relevant to this discussion.  In

60, Lee-Sutherlin Depo., pp. 19-20; *see also* Doc. 59, ¶ 4).

particular, the Court finds that Remington's telling Brokaw to give McCoo what he wanted, *i.e.*, men for the guard positions, to supply the necessary evidence of discriminatory intent. Therefore, Weiser's Motion is **DENIED** as to Plaintiff's claim of disparate treatment.

Evans has also claimed that Weiser "negligently and/or wantonly failed to adequately supervise and train and negligently and/or wantonly retained Kathy Brokaw and/or Chuck Remington, which proximately caused the assault and battery of the plaintiff, the sexual harassment of the plaintiff, and the acts of sexual discrimination and retaliation against the plaintiff" (Complaint, ¶ 57). The parties both acknowledge that this claim arises under State law (*see* Doc. 52, pp. 10-11; Doc. 59, pp. 25-28) and both reference cases which quote the following language from an Alabama Supreme Court case:

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence.

> This may be done by showing specific acts of
> incompetency and bringing them home to the
> knowledge of the master, or by showing them
> to be of such nature, character, and
> frequency that the master, in the exercise
> of due care, must have had them brought to
> his notice.  While such specific acts of
> alleged incompetency cannot be shown to
> prove that the servant was negligent in
> doing or omitting to do the act complained
> of, it is proper, when repeated acts of
> carelessness and incompetency of a certain
> character are shown on the part of the
> servant to leave it to the jury whether they
> would have come to his knowledge, had he
> exercised ordinary care.

*Thompson v. Havard*, 235 So.2d 853, 858 (1970).  Though *Thompson*
concerned the negligent entrustment of an automobile in a
vehicular accident, other Alabama cases demonstrate the
applicability of this language in claims for negligent training
and supervision.  *See Southland Bank v. A. & A Drywall Supply
Co., Inc.*, 21 So.3d 1196, 1214-15 (Ala., *cert. denied sub nom.
Anderson v. Southland Bank*, 130 S.Ct. 275 (2009) and *Big B.,
Inc. v. Cottingham*, 634 So.2d 999, 1003 (Ala. 1993).

In this action, the Court has already discussed Defendant's
slow response time in addressing Evans's sexual harassment/abuse
claim against McCoo as well as Weiser's apparent accommodation
of McCoo's preference for male employees.  The Court finds that
Plaintiff has provided sufficient evidence to let the jury reach

a decision as to whether or not Defendant negligently and/or wantonly failed to adequately supervise and train its employees in dealing with complaints of sexual harassment, discrimination, and retaliation. Therefore, Weiser's Motion is **DENIED** as to this claim.

In summary, Defendant Weiser seeks summary judgment on all claims brought by Plaintiff in this action. The Court finds that Evans has provided sufficient evidence to raise genuine factual questions which require that all claims be allowed to proceed to trial before a jury. Therefore, Defendant's Motion for Summary Judgment is **DENIED** in its entirety (Doc. 52).

DONE this 16th day of February, 2011.


                                    s/BERT W. MILLING, JR.
                                    UNITED STATES MAGISTRATE JUDGE